David Donald Gabel
THE LAW OFFICE OF DOYLE & DOYLE
636 Morris Turnpike
Short Hills, New Jersey 07078
Telephone:    (973) 467-4433
Facsimile:    (973) 467-1199
Attorneys for Plaintiff
*Societa Italiana Assicurazioni e Riassicurazioni S.p.A.*

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------X
SOCIETA ITALIANA ASSICURAZIONI
E RIASSICURAZIONI S.p.A. a/s/o Burgo           :     **CIVIL ACTION NO.**
Group S.p.A.,                                  :
                                               :
          Plaintiff,                           :
   v.                                          :     **COMPLAINT**
                                               :
PORTS AMERICA, INC.,                           :     **ELECTRONICALLY FILED**
PORT NEWARK CONTAINER TERMINAL,                :
L.L.C. and MSC MEDITERRANEAN                   :
SHIPPING COMPANY S.A.,                         :
                                               :
          Defendants.                          :
-----------------------------------------------------------X

Plaintiff, Societa Italiana Assicurazioni e Riassicurazioni S.p.A. by and through its attorneys, The Law Office of Doyle & Doyle, as and for its Complaint against defendants Ports America, Inc., Port Newark Container Terminal, L.L.C. and Mediterranean Shipping Company S.A. (collectively, "Defendants"), alleges herein upon information and belief as follows:

## PARTIES

1.     Plaintiff, Societa Italiana Assicurazioni e Riassicurazioni S.p.A. ("SIAT") is a foreign corporation organized pursuant to foreign law with a place of business in Genoa, Italy. SIAT is engaged in the marine insurance and reinsurance business.

2.     Ports America, Inc. ("PAI), a corporation incorporated pursuant to the laws of the

State of Delaware, regularly conducts business in New Jersey and maintains a place of business in New Jersey located at 525 Washington Boulevard, Suite 1660, Jersey City, NJ 07310.

3. Port Newark Container Terminal, L.L.C. ("PNCT") is a limited liability corporation incorporated pursuant to the laws of the state of Delaware and maintains a place of business at 241 Calcutta Street, Newark, NJ 07114 and is a joint venture with PAI and Terminal Investment Limited SA ("TIL"). TIL is a foreign corporation organized pursuant to foreign law with a place of business at Joulehof 16c, 4622 RG Bergen op Zoom, the Netherlands.

4. MSC Mediterranean Shipping Company S.A. ("MSC") is a corporation organized and existing by virtue of the laws of a foreign state with a place of business at 420 5th Avenue, 8th Floor, New York, NY 10018, and owns, operates, manages and/or charters ocean-going vessels, and acts as a common carrier of goods by water and at all relevant times was and is doing business within the district.

## JURISDICTION

5. Jurisdiction in this matter is based upon 28 U.S.C. § 1332(a), in as much as there is complete diversity of citizenship between plaintiff and defendant and because there exists an amount in controversy in excess of $75,000.

6. Jurisdiction in this matter is also founded upon the basis that this is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. Jurisdiction is also founded upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## VENUE

7.  Venue is proper in the United States District Court for the District of New Jersey in that the Defendants conduct business within the jurisdiction consistent with the requirements of 28 U.S.C. § 1391.

8.  Venus is also proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the Plaintiff's claims asserted herein occurred in the district.

## FACTS

9.  PNCT leases and actively manages and operates a 260 acre facility located at 241 Calcutta Street, Newark, NJ (the "Terminal").

10. At all times mentioned herein, PAI operated and actively managed PNCT PAI and PNCT provide freight handling services at the Terminal involving the loading and unloading of containerized cargo arriving and departing on ocean going vessels. PAI and PNCT also load and unload containerized cargo arriving and departing the Terminal on railcars and trucks.

11. On or about October 13, 2012, a consignment consisting of printing paper goods in sheets and rolls laden into various containers, then being in good order and condition, owned and/or consigned to Burgo Group S.p.A. ("Burgo"), was delivered to MSC and/or its agents at the port of La Spezia, Italy for transportation to New York, New York in consideration of an agreed upon freight, pursuant MSC bill of lading numbers MSCUGP623395, MSCUG613610 and MSCUGP628238, each dated October 13, 2012.

12. Thereafter, the aforementioned Burgo consignment was loaded in good order and

condition aboard the Defendant MSC's vessel M/V MSC MONTEREY and the aforesaid bills of lading were issued pursuant to MSC's terms and conditions for Combined Transport for an intended delivery to Interglobo North America ("Interglobo") at 2 Colony Road, Jersey City, NJ 07305.

13. The aforesaid Burgo consignment stowed within the containers arrived at the Terminal on or about October 27, 2012 at which time such containers and the cargo contained therein were discharged onto the Terminal still subject to the terms and conditions of the aforesaid bills of lading.

14. As early as October 19, 2012, and continuing thereafter, PNCT, PAI and MSC knew, or should have known that a severe storm, then known as Hurricane Sandy ("Sandy") was headed north along the United States' eastern coast.

15. On October 26, 2012 PNCT and PAI convened their first storm preparedness meeting.

16. The last freight shipments out of the Terminal occurred on Saturday October 27, 2012, and by Sunday, October 28, 2012, all freight movements into and out of the Terminal had ceased.

17. On Monday, October 29, 2012, Sandy, as predicated, struck the Terminal, causing a water surge of more than four (4) feet throughout the entire Terminal.

18. Prior to the flooding of the Terminal, PNCT and PAI had accepted delivery of the containers within which Burgo consignment was stowed from MSC for eventual delivery to Interglobo.

19. As Sandy approached Newark and evacuation orders were issued for nearby

communities, none of the Defendants took any action to have the containers in which the Burgo consignment was stowed removed from within the Terminal confines and moved to an elevated and/or inland location.

20. The Defendants knew, or should have known, that the Terminal where the containers in which the Burgo consignment was stowed would be subject to flooding given Sandy's forecasted magnitude and intensity.

21. The containers in which the Burgo consignment was stowed was within the Terminal confines when Sandy hit and the entire Terminal was flooded.

22. The containers were flooded and the Burgo consignment stowed therein was damaged due to the flooding of the Terminal.

23. As the insurance underwriter for the Burgo consignment, SIAT was responsible to Burgo, as its assured, for indemnifying it for the damage sustained to the cargo.

24. SIAT has incurred damages in the sum of €54,212.40 being the total paid to Burgo for the damage sustained to the cargo.

## CAUSES OF ACTION

### COUNT I:   BAILMENT (FOR HIRE) – PNCT AND PAI

25. SIAT incorporates the allegations of Paragraphs 1 through 24 above as though the same were more fully set forth at length herein.

26. The Burgo consignment stowed within the containers was in good order and condition when it was delivered to MSC and thereafter delivered to PNCT and PAI.

27. At all times the Burgo consignment stowed within the container was in the exclusive possession and sole custody of PNCT and PAI from the time of delivery of the container to MSC and including the time the container were within the confines of the Terminal.

28. The sole purpose for PNCT and PAI's possession, custody and control of the Burgo consignment stowed within the containers was so that the containers could be delivered to Interglobo.

29. At all times while the Burgo consignment stowed within the containers was in the exclusive possession and sole custody of PNCT and PAI in their capacity as bailees for hire, and they had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

30. PNCT and PAI breached their duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

31. PNCT and PAI's breach of their duty as bailees for hire to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €54,212.40 being the total paid to its insured Burgo for the damage sustained to the cargo.

### COUNT II: BAILMENT (CONSTRUCTIVE) – PNCT AND PAI

32. SIAT incorporates the allegations of Paragraphs 1 through 31 above as though the same were more fully set forth at length herein.

33. The Burgo consignment stowed within the containers was in good order and condition when it was delivered to MSC and thereafter delivered to PNCT and PAI.

34. At all times the Burgo consignment stowed within the containers was in the exclusive possession and sole custody of PNCT and PAI from the time of delivery of the container MSC and including the time the containers were within the confines of the Terminal.

35. The sole purpose for PNCT and PAI's possession, custody and control

of the Burgo consignment stowed within the containers was so that the containers could be delivered to Interglobo.

36. At all times while the Burgo consignment stowed within the containers was in the exclusive possession and sole custody of PNCT and PAI, in their capacity as constructive bailees they had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

37. PNCT and PAI breached their duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

38. PNCT and PAI's breach of their duty as constructive bailees to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €54,212.40 being the total paid to its insured Burgo for the damage sustained to the cargo.

## COUNT III: BAILMENT (FOR HIRE) – MSC

39. SIAT incorporates the allegations of Paragraphs 1 through 38 above as though the same were more fully set forth at length herein.

40. The Burgo consignment stowed within the containers was in good order and condition when it was delivered to MSC.

41. At all times the Burgo consignment stowed within the container was in the exclusive possession and sole custody of MSC from the time of delivery of the containers to MSC and including the time the containers were within the confines of the Terminal.

42. The sole purpose for MSC's possession, custody and control of the Burgo

consignment stowed within the containers was so that the containers could be delivered to Interglobo.

43. At all times while the Burgo consignment stowed within the containers was in the exclusive possession and sole custody of MSC its capacity as bailee for hire, and it had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

44. MSC breached its duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

45. MSC's breach of its duty as bailee for hire to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €54,212.40 being the total paid to its insured Burgo for the damage sustained to the cargo.

### COUNT IV: BAILMENT (CONSTRUCTIVE) – MSC

46. SIAT incorporates the allegations of Paragraphs 1 through 45 above as though the same were more fully set forth at length herein.

47. The Burgo consignment stowed within the containers was in good order and condition when it was delivered to MSC.

48. At all times the Burgo consignment stowed within the containers was in the exclusive possession and sole custody of MSC from the time of delivery of the containers to MSC and including the time the container was within the confines of the Terminal.

49. The sole purpose for MSC's possession, custody and control of the Burgo

consignment stowed within the container was so that the containers could be delivered to Interglobo.

50. At all times while the Burgo consignment stowed within the containers was in the exclusive possession and sole custody of MSC in its capacity as constructive bailee it had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

51. MSC breached its duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

52. MSC's breach of its duty as constructive bailee to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €54,212.40 being the total paid to its insured Burgo for the damage sustained to the cargo.

## COUNT V: NEGLIGENCE – ALL DEFENDANTS

53. SIAT incorporates the allegations of Paragraphs 1 through 52 above as though the same were more fully set forth at length herein.

54. The Burgo consignment stowed within the containers was in good order and condition when it was delivered to MSC and thereafter delivered to PNCT and PAI.

55. At all times while the Burgo consignment stowed within the containers was in the actual, constructive and/or implied possession of MSC, PNCT and PAI and as such they each had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

56. MSC, PNCT and PAI breached their duty by failing to take any reasonable

precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

57. MSC, PNCT and PAI's acts and/or omissions in failing to take any reasonable precautions to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €54,212.40 being the total paid to its insured Burgo for the damage sustained to the cargo.

## COUNT VI: BREACH OF CONTRACT - MSC

58. SIAT incorporates the allegations of Paragraphs 1 through 57 above as though the same were more fully set forth at length herein.

59. On delivery of the Burgo consignment to Interglobo the cargo was found to be damaged due to wetting which occurred during the carriage of the cargo as defined by the aforesaid MSC bills of lading and MSC's terms and conditions governing the same.

60. The aforesaid damage to the Burgo consignment was caused due to defendant MSC's breach of its obligations as carrier under the aforesaid contract of carriage pursuant to which it was obligated to deliver the cargo in same good order and condition as when the cargo was loaded on its vessel.

61. Defendant was negligent in its care and custody of the cargo in that it failed to ensure that the containers in which the Burgo consignment were stowed were properly stowed and handled on and/off the vessel including the time during the containers were landed at the Terminal including the period of time during the containers were exposed to the aforesaid storm, and in that it otherwise failed to properly arrange for the cargo to be safely carried and delivered.

62. MSC's breach of its obligations as the carrier of the cargo resulted in damage to

the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €54,212.40 being the total paid to its insured Burgo for the damage sustained to the cargo.

**WHEREFORE**, plaintiff Societa Italiana Assicurazioni e Riassicurazioni S.p.A., demands judgment against defendants Ports America, Inc., Port Newark Container Terminal, L.L.C. and Mediterranean Shipping Company in the amount of €54,212.40, along and together with interest thereon, expenses, reasonable attorney's fees and the costs incurred in this matter, and for such any other, further or different relief as this Court may deem to be just and proper in the circumstances.

Dated: October 28, 2013

**THE LAW OFFICE OF DOYLE & DOYLE**

By: _/s/ David D. Gabel_
David Donald Gabel
636 Morris Turnpike
Short Hills, New Jersey 07078
Telephone:   (973) 467-4433
Facsimile:   (973) 467-1199
E-Mail:   dgabel@doylelaw.net

Attorneys for Plaintiff
Societa Italiana Assicurazioni e Riassicurazioni
S.p.A.

and

LENNON, MURPHY, CAULFIELD
& PHILLIPS, LLC
Kevin J. Lennon
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Telephone:   (212) 490-6050
Facsimile:   (212) 490-6070
E-Mail:   KLennon@LMCPlegal.com

Attorneys for Plaintiff
Societa Italiana Assicurazioni e Riassicurazioni
S.p.A.